**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | 20 Civ. 10658 (    ) |
| -against- | **ECF CASE** |
| **KEITH BERMAN and DECISION DIAGNOSTICS CORP.,** | **JURY TRIAL DEMANDED** |
| Defendants. |  |

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against Keith Berman ("Berman") and Decision Diagnostics Corp. ("DECN" or the "Company" and collectively, the "Defendants"), alleges as follows:

<u>**SUMMARY OF THE ALLEGATIONS**</u>

1.      In the spring of 2020, Berman, the president and CEO of DECN, a biotechnology company, went on a publicity blitz to portray the Company as having created a working, break-through technology that could accurately test for Coronavirus disease 2019 ("Covid-19") using just a finger-prick of blood and provide results in less than a minute. DECN's share price and trading volume surged as investors piled into the stock. While Berman and DECN portrayed DECN's product as something that would change the landscape of the Covid-19 pandemic paralyzing the world, the truth was the Company did not have a test, only an idea that had not materialized into a product.

2.      From March 2020 to at least June 2020 (the "Relevant Period"), Berman made materially false and misleading public statements through DECN press releases and other statements about what he claimed was DECN's blood testing kit that could accurately detect

Covid-19 and provide results in less than a minute. Berman also made materially false and misleading statements concerning DECN's efforts to obtain emergency use authorization ("EUA") from the U.S. Food and Drug Administration ("FDA"), the key regulatory approval DECN needed before it could sell a testing product in the United States.

3.      In stark contrast to these representations, all DECN actually had at the time of Berman's statements was a theoretical concept that had not yet materialized into a product, and without a product Berman knew that DECN could not meet the FDA's emergency use authorization testing requirements. These misstatements led to surges in the price and trading volume of DECN.

4.      DECN and Berman have directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5].

## DEFENDANTS

5.      DECN is a Nevada corporation incorporated in 2001 and headquartered in California. DECN describes itself as a "prescription and non-prescription diagnostics and home testing products distributor" and the manufacturer of "glucose test strips" for diabetes testing.

6.      Berman, age 67, is a resident of Westlake Village, California. Berman is DECN's sole director and has served as DECN's President since 2006 and its Chief Executive Officer since September 2017. From August 2006 through September 2017, Berman was DECN's Principal Executive Officer. Berman is not a medical doctor, does not have any formal training in medicine or virology, and prior to February 2020, had never conducted any research into using electrochemical impedance spectroscopy, the technology at issue in this case, to detect viruses. Berman previously stated: "I am responsible for [DECN's] Covid-19 products. I am also the

products Program Manager.  I am responsible for communicating  its design and function as well as managing its upcoming  commerce.  The scientists in Pennsylvania,…the engineers and clinical chemists in Korea, all take their direction  from me."

## JURISDICTION AND VENUE

7.     This Court has jurisdiction  over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act. [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.     The Court has personal jurisdiction  over the Defendants and venue is proper in the Southern  District of New York because many of the acts and transactions constituting  the violations  alleged in this complaint occurred in the Southern District of New York.  In particular, during  the Relevant Period, Berman gave interviews regarding DECN's purported Covid-19 test, which were disseminated  throughout  the District, including  an interview with a correspondent for a New York City television  station that aired in this District.  These interviews contained many of the same false and misleading  statements that were made in DECN's press releases.

9.     Further,  many stock purchases during  the Relevant Period originated  in the District.  For example, in March 2020, nine of the market makers for DECN's stock were located in this District and at various points either actively quoted bids and asks for DECN stock, facilitated trading  in DECN stock, or both.  Finally,  DECN's stock was at all relevant times quoted on the Manhattan-based OTC Link ATS whose parent company is OTC Markets Group Inc. ("OTC Markets"), and for each trade in DECN stock, necessary clearing  services were processed through the Depository Trust Clearing Corporation's  ("DTC") data center located in Manhattan, which thus was used to facilitate  the actual exchange of stock for money between purchasers of DECN shares.

10.     The Defendants, directly  and indirectly,  have made use, in the United States, of the

means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and/or the mails, in connection with the acts, practices, and courses of business set forth in this complaint.

## FACTS

### I.      DECN's Filing History with the SEC and Its Faltering Financial Situation

11.      DECN has a class of securities in the form of common stock that trades on the over-the-counter ("OTC") market.  DECN's common stock is not registered with the Commission.

12.      In 2016, DECN filed a Form 15 suspending its duty to make filings with the Commission.  DECN submits financial statements to OTC Markets, but the financial statements are unaudited.

13.      At all times relevant to this Complaint, DECN's stock was a "penny stock" as defined by the Exchange Act.  DECN's stock traded at less than $5.00 per share and did not meet any of the exceptions to penny stock classification under Section 3(a)(51) and Rule 3a51-1 of the Exchange Act.

14.      As of April 21, 2020, DECN had approximately 13 market makers, and its common stock was eligible for the "piggy back" exception of the Exchange Act, Rule 15c2-11(f)(3).

15.      On April 23, 2020, the Commission issued an order suspending trading in DECN's stock from April 24, 2020 to May 7, 2020, because of questions regarding the accuracy and adequacy of information in the marketplace about DECN.

16.      DECN common shares are no longer continuously quoted on an interdealer quotation system.  Instead, unsolicited quotations are being published by brokers (on behalf of their customers) on OTC Link ATS.

17.     According to DECN's most recent annual financial statements for the fiscal year ended December 31, 2019, submitted to OTC Markets on March 30, 2020, DECN reported cash of approximately $50,000, total assets of approximately $5.1 million (the majority of which is the reported value of certain intellectual property), and revenues of approximately $528,000.

18.     Additionally, DECN reported total liabilities of approximately $2.9 million and an accumulated deficit of approximately $47.6 million since its inception.

19.     DECN's annual report for 2019, as well as prior quarterly reports, includes a going concern statement questioning whether it could continue as a financially solvent company.

## II.     DECN Seized Upon the Covid-19 Global Pandemic

20.     In early 2020, Covid-19 was tearing through Asia and Europe. By February, the virus started to spread rapidly throughout the United States. On March 11, 2020, the World Health Organization declared the Covid-19 outbreak a global pandemic.

21.     Berman has previously stated that in mid-February 2020, "I learned from a CNN news report of the outbreak of COVID-19 in Daegu, Korea (a/k/a Ground Zero), the location of DECN's diabetic test strip factory and research and development arm." Thereafter, Berman decided to have DECN attempt to develop a Covid-19 blood test. This was the first time DECN ever pursued a test to detect a virus. Until this point, DECN's primary business related to glucose testing for diabetes.

## III.     Berman Issued Multiple False and Misleading DECN Press Releases

22.     During the Relevant Period, Berman disseminated DECN's press releases to the public through an account he alone controlled with Accesswire, a global press release and newswire service. Berman was the primary, if not sole, drafter of DECN's press releases during the Relevant Period. Furthermore, Berman had final editorial control over the content of the press

releases and made the sole and ultimate decision to issue DECN's press releases. For each of the DECN press releases discussed below, Berman disseminated them by uploading them to Accesswire from his account with the understanding that, under the Service Agreement Berman signed as DECN's CEO, Accesswire would distribute the press releases to its North American lists and, more generally, make the press releases publicly accessible through Google, Yahoo, and other electronic services. In addition, all of these DECN press releases were posted to the OTC Markets website, *available at*: https://www.otcmarkets.com/stock/DECN/news, where financial information and disclosures related to the Company were also posted.

23.     Overall, DECN and Berman's press releases and other public statements falsely and misleadingly conveyed to the market that DECN had a Covid-19 testing kit, which Berman branded and marketed as "GenViro!." In truth, at the time these statements were made, Berman and DECN knew that DECN's manufacturer had not manufactured a single testing kit or prototype device capable of testing for the presence of Covid-19 in a blood sample. The Commission uses "testing kit" to describe DECN's alleged product, which did not actually exist in any form, and which Berman alternatively referred to as, among other things, the "screening test," "screening method," "test kit," "product," "Swift kit," "GenViro!," "device," and "professional use device."

24.     At the time of the Defendants' statements, DECN had an unproven and theoretical concept, but not a proven method for detecting Covid-19, let alone a physical Covid-19 testing kit. Accordingly, the Defendants' statements were false and misleading.

25.     Similarly, even though DECN had not built a Covid-19 testing kit, Berman made false and misleading statements about DECN's progress with the FDA towards obtaining EUA in press releases. Berman repeatedly claimed that DECN was close to completing the FDA's testing

requirements and planned to complete them.  However, Berman knew that DECN was unlikely to meet the FDA's testing requirements.

26.     The Defendants also omitted material facts in the DECN press releases and other statements, thereby rendering such statements false and misleading.  For example, the Defendants touted the time it would take to obtain test results, the accuracy of the results, and, more generally, that DECN's Covid-19 testing kit worked.  The Defendants also repeatedly used images that purported to show DECN's Covid-19 testing kit.  However, the Defendants knew and failed to disclose that the Company had not made a physical product or prototype.  In addition, the images they used were not of an actual Covid-19 testing kit, but of an existing DECN blood-glucose meter and a mock-up of packaging for GenViro!.

27.     Taken together or separately, Defendants' statements misled the market because they created the false and misleading impression that the Company had a tangible and working Covid-19 testing kit, when it did not.

### A.     False and Misleading Statements Concerning the Existence of a Covid-19 Testing Kit

28.     On March 3, 2020, Berman issued a press release on behalf of DECN.  In the press release, Berman and DECN "in a break-through" "announce[d]" "the introduction of our new screening methodology for the Coronavirus," and declared "[o]ur product is timely, simple to use, cost effective and will be commercial ready in the summer of 2020."  DECN's press release also quoted Berman: "I want to say straight on that we have developed a Coronavirus screening method, not a cure or a vaccine for this virus..."

29.     These statements created the false and misleading impression that DECN had developed a Covid-19 testing kit when, in fact, the Company had not developed anything at that point.  As of March 3, 2020, the Company had not even chosen a design for its testing kit; and,

just one day prior, a paid scientist for DECN, whom Berman described as his "primary consultant" (the "Science Consultant"), emailed Berman and expressed doubt about DECN's ability to test for Covid-19 using the technology Berman discussed in the March 3 press release.

30. Over the next several weeks, Berman continued to issue DECN press releases, each of which falsely and misleadingly conveyed that the Company had developed a tangible Covid-19 testing kit. In truth, during the entirety of the period in which Berman disseminated the materially false and misleading press releases containing the statements below, he knew that the Company had not manufactured a prototype or any tangible testing kit that could identify Covid-19 using a blood sample, and he did not know if DECN's testing concept would work:

| Press Release Date | Statements |
|---|---|
| March 4, 2020 | Mr. Berman concluded, "I again want to reiterate that the development of our Coronavirus screening method is not a cure or a vaccine for this virus." |
| March 11, 2020 | Today, in the third discussion of our break-through test for the coronavirus (COVID19), we present the Coronavirus test kit and the Phase 1 unit forecast. The introduction of our new screening methodology for the Coronavirus (Covid19) will provide a timely, simple to use and cost effective solution for the screening of the frightening COVID19 virus. |
| March 16, 2020 | Today, DECN announces in this first of four releases expected in the next 14 days, further details of our revolutionary Coronavirus (Covid19) screening test GenViro!™. |
| March 16, 2020 | Keith Berman, CEO of DECN commented, "We plan a total of three additional releases in the coming days, the first new release discussing the product itself and why it is so special, the second release will discuss a roll-out plan, and the third release will summarize everything we have discussed to date, and talk about a second product we are working on, making use of the same technology, that is uber precise and destined to find its way into hospitals."<br><br>…<br><br>Mr. Berman concluded, "I will say again, that we have developed a Coronavirus screening method, not a cure or a vaccine for this virus." |

| | |
|---|---|
| March 17, 2020 | Today, in this second of four updates about our GenViro™ "Swift" kit for the testing of COVID-19, we will focus on our expected roll-out. We are happy to inform interested parties that we have raised our 12-month forecast to 525 million kits.<br><br>…<br><br>Mr. Berman concluded, "As you might imagine with a product announcement of such importance, we have been contacted by a number of potential partners for our kit. To date we have discussed our GenViro™ product with a big box pharmacy chain, a master medical products distribution company, a large commercial lab, and a home health organization. All of these entities want the kits and we intend to write their business." |
| March 25, 2020 | Keith Berman, CEO of DECN commented, "When we began exploring available testing methods for the Covid-19 virus, our goals were straight forward. Provide an easy to use, reliable, inexpensive test kit, designed for immediate use at the point of care, and eventually for at-home use. We accomplished these goals with our GenViro! Swift kit." |
| April 6, 2020 | Keith Berman, CEO of Decision Diagnostics commented, "…I have always believed that our impedance based core technology, first used as a critical part of our GenUltimate TBG product in the fall of 2019, was an adjustable crescent wrench type tool with many and varied possible applications. The first result of our hard work is the Covid-19 Swift kit that will be administered by professional health responders. |

31.     On April 7, 2020, Berman issued another DECN press release, quoting Berman: "Mr. Berman continued, '…Today our partners began ordering these components to begin build, assembly and bench testing for the post-prototype version of GenViro!™, Point of Care kit.'" Berman's statement was once again false and misleading because he claimed that DECN was ordering components to build a "post-prototype" version of GenViro!, thereby creating the false impression that DECN had built a prototype of its Covid-19 testing kit, which it had not. In fact, Berman subsequently admitted in a sworn affidavit: "The fact that DECN did not have any test kits (or prototypes) available [on or before April 7, 2020] is hardly remarkable; in fact, any assertion to the contrary would correctly be deemed to lack credibility."

B.    **False and Misleading Statements Concerning**
**Efficacy and Features of DECN's Covid-19 Testing Kit**

32.     Relatedly, the Defendants created a materially false and misleading impression about the existence of a Covid-19 testing kit through claims about the efficacy and features of a testing kit they had not yet made or tested. For example, on March 4, 2020, Berman issued a DECN press release describing DECN's Covid-19 testing kit: "This innovative, precise and cost effective product is timely, simple to use, and most importantly will be commercial ready in the late summer of 2020." Berman, through a quote in the DECN press release, went on to describe a purported feature of DECN's Covid-19 testing kit: "…That is not to infer that unexpected clever and useful features are not built into our Coronavirus screening solution. For example, not only will the screening device provide the expected NEGATIVE or POSITIVE result (answer), but with each result provided, the answer will be accompanied by a probability statistic that will allow the user to determine the probability that the POSITIVE or NEGATIVE reported by the system may be a false rendering -- a false POSITIVE or a false NEGATIVE."

33.     However, the Defendants failed to disclose that, at the time of the statements, DECN had not made a prototype or other physical device and therefore had not confirmed—and could not have confirmed—the testing kit's ability to identify COVID-19 at all, let alone its accuracy, timeliness, or other device features. DECN still lacked a prototype or other physical Covid-19 testing kit when Berman disseminated additional false and misleading DECN press releases containing the statements below:

| Press Release Date | Statements |
|---|---|
| March 18, 2020 | Today, DECN announces that the company is revising strategies (and forecasts) for its GenViro!™ Covid-19 test kit, a test kit that provides a coronavirus result in less than a minute, at the point of case. |
| March 23, 2020 | Keith Berman, CEO of DECN commented, "…GenViro!  provides results in 15 seconds, based on a small finger prick blood sample. The method is safe, effective, and its biggest benefit to the healthcare system is that the device can be used to screen out the 97% or 98% of those tested that are negative for COVID-19. Our method is quicker, provides the desired result, is much cheaper, and effective." |
| April 6, 2020 | Keith Berman, CEO of Decision Diagnostics commented, … <br><br> "Our Swift kit will take a small amount of time to administer to a patient by a professional, such as poking a patient's finger-tip to achieve a drop of blood. Results will be available in about 15 seconds." <br><br> … <br><br> Mr. Berman continued, "…If April 3 is the date where we drove our product stake into the ground, then the new product was conceived, designed and readied for FDA EUA review in approximately 45 days. Our method is unique, minimally invasive, doesn't require a painful nose swab, and true to its trade name – Swift." |
| April 21, 2020 | The DECN GenViro! kit does not employ a nose swab, rather it receives its small blood sample through a finger prick, is self-contained and disposable, does not require a hospital or clinical lab based instrument for analysis, and it only takes 15 seconds, a minute fraction of the nose swab tests. |

34.     DECN not only had failed to produce a prototype, or any COVID-19 testing kit at the time Berman made the above statements, but Berman also was repeatedly advised that the Company's concept for a COVID-19 testing kit, which relied upon a blood sample, would not work as described in DECN's press releases.  Berman also knew that the statements were false and misleading because he had not determined whether his Covid-19 testing concept would work at all.  For example, on March 21, 2020, Berman received an email from an advisor and former officer of DECN warning that Berman's proposed method for detecting Covid-19 in small blood

samples was "theoretical" and not a "proven, commercial method for detecting specific viruses" like Covid-19.

35. On March 22, 2020, staff for DECN's South Korean manufacturer informed Berman that: (1) the sample used for testing must be from nasal and/or throat swabs and not blood; and (2) even if a nasal and/or throat swab is used, DECN's proposed testing method may not be able to provide a positive result for Covid-19.

36. On April 2, 2020, staff of DECN's South Korean manufacturer emailed Berman and again expressed skepticism that Covid-19 could be detected in blood. Berman forwarded this email to his Science Consultant, who replied and warned Berman that he too had "not seen any data to support that Covid or Influenza virus can be detected in blood."

37. And, on April 5, 2020, the Science Consultant emailed Berman: "[The South Korean manufacturer] and I seem to be looking at this project with different glasses. They are ready to implement something that is manufacturable. For me it is more important to demonstrate that the product is viable."

38. Other examples of Berman's false and misleading statements come from a mid-April 2020 interview with a New York affiliate of CBS that aired on television and then was posted on the station's website on May 5, 2020. In the interview, Berman falsely and misleadingly described DECN's Covid-19 testing kit as a "game changer" because "it works" and "it works fast." At the time, DECN still had not manufactured a prototype or other device that could detect Covid-19 in a blood sample nor had DECN conducted any testing on Covid-19-infected blood samples to confirm that it "works."

C.     **False and Misleading Statements Concerning**
       **DECN's Testing, Validation, and Progress Towards**
       **FDA Emergency Use Authorization**

39.     In other press releases, Berman and DECN made materially false and misleading statements about the existence of DECN's Covid-19 testing kit through claims about testing, validation, and progress towards FDA emergency use authorization. Under the EUA mechanism, the FDA may allow the use of unapproved medical products like testing kits in an emergency to diagnose serious diseases, when certain statutory criteria have been met. Statements Berman and DECN made about FDA emergency use authorization were material to the market, including to investors and potential distributors and customers, because they falsely and misleadingly conveyed that DECN had a Covid-19 testing kit that could receive FDA emergency use authorization for DECN to sell it in the United States and that DECN management had a reasonable basis in fact for expecting authorization.

40.     For example, on March 16, 2020, Berman issued a DECN press release in which the Defendants claimed:

> We are awaiting release of blood samples from previously infected people in Daegu, Korea, so that we can complete testing and make a final report to the U.S. FDA so that we may secure our Emergency Waiver. In the meantime, all other requests made by the FDA will be met this week and next.

41.     This statement was materially false and misleading for several reasons. First, Berman knew that DECN and its South Korean manufacturer were not in a position to "complete testing" or make a final report to the FDA because the Science Consultant had not even finalized a design for the testing kit. Second, Berman's statement created a false and misleading impression that at least some testing had been conducted on DECN's testing kit, when it had not. Third, DECN did not have a testing kit and, therefore, could not have conducted testing prior to the statement and was not in a position to complete testing upon the release of infected blood samples.

42.     On March 18, 2020, Berman issued a DECN press release stating that "[the] company expects that it will receive a major boost from the most recent and thus far most optimistic FDA guidance for Coronavirus test kits" and that "[a] significant change to this [FDA] policy is that once validation testing for a product has been completed, the test can be distributed to customers, entities and users, with certain labeling and a summary of test results provided on the company website (and/or the packaging)."  Berman then went on to claim:

> GenViro!™ has been validated at the company's R&D center in Daegu, Korea for the H5N1 virus and most recently the methodologically similar corona virus.

Berman also provided a quote that provided, in part: "While the company will still need to provide ample data and a full discussion of its unique technology in the coming days, the new FDA policy will provide a channel that will allow the company to manufacture test kits and put these kits into distribution almost immediately."

43.     The Defendants' March 18 statements were materially false and misleading because Berman knew that DECN's "R&D" center in Daegu, Korea did not validate GenViro! on H5N1 or Covid-19 because no testing kit existed on which it could have conducted any validation testing.  At the time, DECN still had not completed its designs for component parts for its Covid-19 testing kit; its South Korean manufacturer had not conducted any tests using infected blood samples containing H5N1 or Covid-19; and, neither DECN nor its South Korean manufacturer had access to Covid-19-infected blood samples.  For the same reasons, DECN was also not in a position to "almost immediately" distribute any testing kits.

44.     DECN filed an application with the FDA for emergency use authorization for a Covid-19 testing kit (the "EUA Application") on April 3, 2020.  On April 6, 2020, Berman issued a DECN press release announcing DECN's filing of its EUA application.

45.     On April 7, 2020, Berman issued a DECN press release about its EUA Application. Berman, in describing DECN's receipt of an acknowledgment and device serial number from the FDA, referenced exchanges DECN's counsel had with the FDA and wrote "In one of those exchanges, the FDA provided Guidance for our final product testing." Berman then provided a quote for the press release:

> As early as Saturday April 4, it was clear that the FDA review staff was aware that our methodology was different than those slower and older methods that had received FDA EUAs, or were in review. Although the testing requested will be rigorous, it appears that testing will require 30 known Covid-19 positive samples and 30 known Covid-19 negative samples, all samples based on venous blood. The company is now looking to contract with a hospital or commercial laboratory to complete this testing.

46.     Subsequently, on April 23, 2020, Berman issued an additional DECN press release with an update on the "FDA Emergency Waiver (EUA) Progress." Berman referenced "two long conversations with FDA staff and management" noting that the second conversation occurred on April 14, 2020 "between our FDA counsel, DECN management and DECN technical and product development professionals." Berman continued: "We believe we have completed discussions and have come to an understanding with the FDA on all of the testing required to receive the EUA. We plan to engage a specialty reference laboratory to complete this testing in the next 10 days. Testing should take about a week."

47.     Berman's April 7 and April 23 statements concerning the DECN's EUA Application progress were materially false and misleading because they conveyed that DECN planned to begin the testing required by the FDA for approval of its EUA Application while omitting to disclose that DECN did not yet have a physical testing kit that could be tested. Berman also omitted to disclose that DECN had no intention of completing the required testing. Instead, to DECN's FDA counsel, Berman claimed that he would pursue a testing method that had not been

accepted by the FDA, and apply political pressure in an effort to obtain an exception to the FDA's testing requirements.  For example on April 15, 2020, Berman emailed DECN's FDA counsel:

> We are still, for the most part being held to test standards we will most likely not be able to live up to especially the expected demand for live patients to test. That is the killer.  So, because we cannot negotiate with them, we do the next best thing, we flood the airwaves with interviews and we use lobbyist type political attacks at the upper levels in the FDA.

48.     On April 20, 2020, Berman again emailed DECN's FDA counsel about the Company's inability to meet the FDA's testing requirements:

> Have we heard back from the FDA concerning the overall testing requirements/needs of our product (after our written summaries)?  I want to make sure that we are able to use virus spike venous blood for our testing…If not we will use it anyway because it is impossible for a small company to have HazMat suit people to traipse around the USA seeing live (surviving) donors.  If the FDA remains silent or if they tell us no, I will then turn to my political plan.

### D.     Materially Misleading Omissions Through Testing Kit Images

49.     Berman and DECN also created a materially false and misleading impression about the existence of a Covid-19 testing kit through the use of pictures and other images.  In a March 11, 2020 DECN press release drafted and disseminated by Berman, the following image appeared with a box containing "GenViro!™ COVID-19 Screen" with the tagline "With the GenExpidient Universal Biosensor and 2 sensors to screen for the Coronavirus":



This image, which also appeared on DECN's website, was another example of the Defendants conveying that DECN had made a working Covid-19 testing kit when, in truth, it had not. The only disclaimer appearing with the image was fine print stating that the testing kit was "[n]ot yet available for sale in U.S.A. or Puerto Rico," but no disclosure that no testing kit had been made at all. The Defendants also knew and failed to disclose materials facts in connection with their use of these images, including the fact that (1) the pictured "Avantage!" meter was an existing DECN glucose-testing product, and not a Covid-19 testing device, and (2) the GenViro! box was the anticipated packaging and the Company had not completed its design of the "Biosensor" or the "test strips" depicted on the packaging.

50.     Similarly, during Berman's mid-April 2020 interview that aired on a New York affiliate of CBS, the station displayed images, obtained from DECN, that showed a meter with a test strip inserted and packaging, along with packaging similar to the one displayed in the March 11 DECN press release. As with the above statements, Berman knew that the Company had no prototype and had not conducted any testing to prove its methodology was successful in identifying the presence of Covid-19 in blood, and that image the Company provided to the television station was not a Covid-19 testing kit. Without any disclaimer, the image of the test strip inserted into a meter device DECN created and provided to the television station gave the false impression of a fully completed product. This was not true.

51.     The Defendants knew, or were reckless in not knowing, that their statements regarding DECN's Covid-19 testing kit were false and misleading.

## IV.     DECN's False and Misleading Press Releases and Statements Affected DECN's Stock Price and Volume

52.     DECN and Berman's false and misleading statements affected the price and trading volume of DECN's stock.

-17-

53.     During the three months prior to March 3, 2020, DECN's share price fluctuated between $0.0101 and $0.023 per share with an average daily trading volume of 237,701 shares.

54.     After DECN's March 3 Press Release its stock price and trading volume shot up, with the price rising by nearly 1,200% before the Commission's April 23, 2020 trading suspension. Since the suspension, the stock has remained well above its pre-announcement price on higher than usual trading volume. More specifically, from December 31, 2019 through March 2, 2020, DECN stock never traded over $0.023 a share. On March 2, 2020, the stock closed at $0.02. On March 3, 2020, the stock closed at $0.03. The stock reached a high of $0.50 on April 23, 2020, at which point the Defendants had disseminated fourteen press releases related to a DECN Covid-19 testing kit.

55.     Moreover, after DECN's press releases on April 6 and 7, publicizing DECN's EUA Application, investor interest in DECN's stock spiked. On April 6, following DECN's press release announcing its EUA Application, DECN's stock price doubled from its prior trading day closing price of $0.06 per share to a closing price of $0.12 per share, with trading volume increasing by 860% from its April 3 volume. Following DECN's April 7 press release about its EUA Application, DECN's stock price jumped to a closing price of approximately $0.20 cents per share, with trading volume up 1,700% from its April 3 volume.

## COUNT I

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

#### (as to Berman)

56.     Paragraph numbers 1 through 55 are re-alleged and incorporated herein by reference.

57.     By engaging in the conduct described above, Berman directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national

security exchange, with scienter:  (a) employed devices, schemes, or artifices to defraud;  (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;  and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless restrained and enjoined will continue to violate these provisions.

### COUNT II

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (As to Decision Diagnostics Corp.)

58.      Paragraph numbers 1 through 55 are re-alleged and incorporated herein by reference.

59.      By engaging in the conduct described above, Decision Diagnostics Corp. directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter:  (a) employed devices, schemes, or artifices to defraud;  (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;  and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless restrained and enjoined will continue to violate these provisions.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

I.

Permanently enjoin defendants Decision Diagnostics Corp. and Keith Berman from directly or indirectly violating the applicable provisions and rules of the federal securities laws as alleged and asserted above.

II.

Enter an Order requiring defendants Decision Diagnostics Corp. and Keith Berman to pay civil money penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

III.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibit defendant Keith Berman from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

IV.

Enter an Order barring Berman from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)].

V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

-20-

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission hereby demands trial by jury.


Dated: December 17, 2020                    Respectfully submitted,


                                            _____S/David Misler_____
                                            JAMES CARLSON
                                            DAVID MISLER*
                                            Attorneys for Plaintiff
                                            SECURITIES AND EXCHANGE
                                            COMMISSION
                                            100 F Street NE
                                            Washington, DC 20549
                                            Tel: (202) 551-3711 (Carlson)
                                            Tel: (202) 551-2210 (Misler)
                                            Email: mislerd@sec.gov
                                            Email: carlsonj@sec.gov


*Pending admission pro hac vice
Of counsel:
Ernesto Amparo
Jeff Leasure
Carlisle Perkins
100 F Street NE
Washington, DC 20549